Case No. 21-1233, China Telecom Americas Corporation petitioner v. Federal Communications Commission and United States of America. Mr. Blau for the petitioner, Mr. Novak for the respondent. Mr. Blau, good morning. May it please the Court, Russell Blau for China Telecom Americas. I'd like to reserve three minutes for rebuttal. Since the FCC embarked some four decades ago on a policy of inviting open competition and providing domestic and international long-distance services, thousands of companies have obtained authorizations to provide those services and invested untold billions of dollars in facilities to use those authorizations. In today's case, the FCC has announced for the first time they could revoke any of those licenses at any time without even allowing the carrier to see all the evidence against it or to defend itself in a hearing. This violated both the agency's own consistent past practice and the requirements of the due process laws. In effect, the agency gave no weight at all to the carrier's reliance interests and said that the carriers were not entitled to rely upon the continued access to those licenses. The FCC admitted that a substantial motivation for its action was the United States government's view of China as a hostile foreign power. When this kind of political animus underlies an agency action, the need for the agency to... Political animus? You don't think that's a supportable conclusion? It's a policy conclusion, certainly. The government's certainly entitled to view a foreign country as hostile if it wants to. And they explained that at length in this order. Yes. And although the FCC cited various other reasons for revocation, they made it fairly clear that they thought that the fact that this company was owned by the Chinese government indirectly was by itself a sufficient reason for revocation. Contrary to many decades of precedent saying that they would revoke licenses for egregious misconduct, now they say that no misconduct at all is necessary. We suggest that even if the due process clause permits some agency hearings to be conducted without an ALJ presiding, the circumstances of this case would create a heightened need for such a neutral adjudicator. Because the FCC had already expressed its policy views that dictated the outcome. The FCC's argument, essentially, is that this is a straightforward, substantial evidence case, suggesting that if they have some plausible basis for their decision, then it doesn't really matter how they reach that decision. But that ignores the agency's duty to follow its own rules, as well as the fundamental requirement of consistency in administrative law. An agency cannot cherry-pick procedures and standards case-by-case to suit desired outcomes. That would create enormous and costly uncertainty for all the other regulated parties, since they would have no idea how they could expect to be treated if they ever get hauled. In the past, the FCC has always designated and tested revocations for hearing under its subpart B rules, which it now says don't apply, the only exception being where a carrier has defaulted or gone out of business when, of course, there's no point in holding a hearing. The FCC's argument that this represents a mere handful of cases is disingenuous because there is, in fact, no case of a contested revocation that was not designated for hearing for this one. What's the difference between the process you got and the process you wanted? You're talking about a hearing, but in this context, hearing can mean written submission, and you made two very robust written submissions. So is it just not getting the ALJ? Under the FCC's rules, if they had conducted a hearing on written submissions, we would have had, first of all, the ALJ or some other presiding officer. Secondly, we would have had an opportunity for discovery. And third, we would have had the opportunity to argue under Matthews v. Eldridge that we were entitled to an oral hearing before rather than after the FCC had reached its decision. What would you take discovery of? Oh, yeah, I was going to ask you the same thing. What's the alleged injury? What discovery have you been denied? The discovery would go to the… Classified material? You're going circular there. Well, in part, if the court found we were entitled to some disclosure of classified information, that would certainly be… All right, so take that off the table. What else are you talking about? Let me just tell you why, and I think Judge Katz is alluding to the same thing. In agency proceedings, even if it's a paper proceeding, you're not foreclosed for asking for review of certain materials if you think they're relevant to the position you want to advance. What did you ask for and were denied? Well, we asked for a hearing because we understood… No, no, come on, counsel. I'm talking in the context of discovery. Be serious. What did you ask for and what did the FCC deny in terms of discovery other than the classified material? Nothing. We did not ask specific… So that's an idle argument, which carries no weight. What are your other claims, then? Because paper hearings are not unknown and can be done in many cases, and your argument, it seems to be it was totally inappropriate here, and I'm trying to figure out why. It was inappropriate because we believe Matthews v. Eldridge factors are satisfied and require an oral hearing. We think, first of all, that the interests at stake here are very significant, that the FCC discounted them improperly. Again, the reliance interests, not just China Telecom Americas, but all the other telecom carriers in this open market rely upon having these licenses and having some expectation as to when they might be revoked. Even the government admits that there's some reliance interests here, although they try to minimize it. If the FCC, if the case had involved an ALJ, who would make the final factual determinations for the agency? The agency itself would review the ALJ. So, I mean, I'm missing what it is you are alleging to be injury. The FCC is going to make the factual determinations. They're going to make their own declarations on substantial evidence on their legal notions. What did you miss? And you admit you were not denied any discovery. So what have you lost? I believe that if we had an ALJ hearing and we had a factual record developed through an oral hearing, even if the FCC did make those factual determinations against us, as you suggested, at least this court would have a much more robust record on a review in order to be able to review that decision. There's no other questions. I'll reserve the balance. All right. Thank you. Mr. Novick. Thank you. I'm Scott Novick for the government. The FCC reasonably determined that allowing these companies to retain their Section 214 authorizations would pose serious and unacceptable national security risks. The record shows that these companies have the potential motive to harm national security. These are only controlled by the Chinese government. The record shows these companies have the ability to harm national security through their access to U.S. telecommunications infrastructure and U.S. customer records and communications. And the record shows that these companies have failed to be transparent and forthcoming in response to inquiries from the U.S. government. Now, as I've reached out to Telecom Supply Brief and the arguments so far, they appear to be to have largely abandoned any independent challenge to the substance of the commission's decision. They appear to be focused almost entirely on the commission's process. But the process here was entirely lawful and was appropriately tailored to the issues the commission was considering. The Supreme Court, of course, tells us in Matthews that the ordinary principle is that something less than an evidentiary hearing is sufficient prior to adverse administrative action. And here the FCC provided the companies both with detailed notice of the legal and factual issues that we consider and with multiple opportunities to offer any relevant evidence and to present any relevant arguments. And I think as the arguments so far as established, either China Telecom nor the other companies here today have ever clearly explained why the procedures here wouldn't allow them to meaningfully present their case. There was no need, for instance, for live witness testimony here. Turning to the statutory and administrative arguments with respect to procedure, China Telecom, of course, concedes in its brief that nothing in Section 214 itself or the commission's implementing rules specifically requires a subpart B hearing for Section 214 revocations. And that's unlike the radio licenses where such a hearing is specifically required. And I think the debate between the parties here about whether there was or wasn't some sort of a past policy actually winds up being a bit of a sideshow. The order says we don't think there was a past policy of requiring a subpart B hearing in all Section 214 revocations. We think that was handled on a case-by-case basis and the facts in those cases were very different. But the order explains that even if you disagree with us, an agency can change policy. It isn't bound by past policy forever. And here the commission said that if there was such an across-the-board policy in the past, we now see that it's unwise, especially in cases like this involving unique national security considerations. And so the commission disavowed it. And that's entirely permissible. That's just like the Verizon case that we discussed in the brief at pages 45 to 46. If the court has any further questions on the commission's process or on China Telecom, I'm happy to address those. And if not, then I can rest and return after Pacific Networks argues. All right. Thank you, Your Honor. Yes. Does Mr. Blau have any time left? Yes. That's right. You do. That's right. Go ahead. Thank you. As Mr. Novak said, the FCC believed that China Telecom Americas had failed to be transparent and forthcoming. In fact, the gist of their findings to the extent that they address China Telecom Americas conduct specifically was that the company could not be trusted. And clearly that goes not just to what did China Telecom do or not do, but what was its intent and motivations. And that's why particularly we think that discovery and depositions would be particularly important in this case. And I would also suggest that the Supreme Court's decision in Department of Homeland Security versus Regents of University of California undercuts their argument that they can simply disavow their past practice without ever acknowledging that it existed. The court made it fairly clear that the agency has to grapple with and give reasons for departing from past practice, not merely tend that it never existed. No further questions. Great. Thank you.
judges: Henderson, Katsas, Edwards